UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CIRRUS ABS CORPORATION, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:24cv251 DRL-SJF |
| STRATEGIC AMERICA, INC., | |
| Defendant. | |

## OPINION AND ORDER

Cirrus ABS Corporation alleges six claims against Strategic America, Inc. for copying and utilizing its trade secrets—particularly, its digital marketing product called MarketSnare. Strategic America moves to dismiss four claims under Federal Rule of Civil Procedure 12(b)(6). The court grants the motion only in part, dismissing as preempted Cirrus's claims for theft and conversion, unfair competition, and tortious interference with business relationships, but upholding its claim for misappropriation of trade secrets.

## BACKGROUND

The following facts emerge from the verified complaint, which the court must assume as true for this motion. Cirrus is a technology and marketing firm based in Fort Wayne, Indiana [4 ¶ 1]. Its product, MarketSnare, enables corporate marketers and marketing agencies to manage content on several websites centrally while ensuring that the sites remain unique, locally relevant, and high-ranking under internet search algorithms [*id.* ¶ 4-8]. MarketSnare marries certain software capabilities and user inputs to vary website content for this purpose [*id.* ¶ 7].

Cirrus has optimized its product's performance—balancing efficiency and originality—based on years of experimentation and investment [*id.*]. It has likewise developed documentation to ensure clients can successfully use the product [*id.* ¶ 11]. Users must draft content in "SnareScript" format for the

software to work, and MarketSnare provides training and information on how to achieve effective performance [*id.*].

In 2014, Cirrus and Strategic America (a digital marketing company) entered a Master Reseller Agreement (MRA) granting Strategic America the nonexclusive right to resell MarketSnare to clients outright and through sub-resellers [4-1]. The MRA contains a confidentiality provision stating Strategic America "shall use [] Confidential Information only for the purposes of [the] Agreement" and cannot "copy, disclose, convey or transfer any of the Confidential Information or any part thereof to any third party," except to sublicense MarketSnare under the MRA [4-1 § 14]. Confidential information includes "software computer programs, object code, [and] source code," among other data [*id.*]. Cirrus likewise maintains confidentiality agreements with all employees, clients, partners, and their clients, and ensures that MarketSnare techniques and processes are not publicly available [4 ¶ 12, 30].

Cirrus says Strategic America, while subject to the MRA, worked secretly with The Lines Group Limited (Lines Group) to develop EditionAI—a MarketSnare copycat that mimics its techniques and processes, incorporating Cirrus's trade secrets [*id.* ¶ 13, 20-21, 31, 35]. Cirrus says this development resulted in a near-identical product, so similar that EditionAI can run on SnareScript with only a minor syntax change [*id.* ¶ 13]. Cirrus says Strategic America then migrated its clients from MarketSnare to EditionAI and terminated the MRA [*id.*].

Cirrus sued Strategic America on May 31, 2024. The complaint includes six claims—(1) breach of contract; (2) misappropriation of trade secrets under the Indiana Uniform Trade Secrets Act (IUTSA), Ind. Code § 24-2-3-1 *et seq.*; (3) theft and conversion under the Indiana Crime Victims Relief Act, Ind. Code § 34-24-3-1; (4) unfair competition; (5) tortious interference with business relationships; and (6) unjust enrichment. Cirrus requested damages and injunctive relief. Strategic America removed. On July 8, 2024, it filed a motion to dismiss counts 2-5.

STANDARD

In reviewing a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[W]ritten instruments attached to a pleading become part of that pleading for all purposes." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (quotation and citation omitted). The complaint must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

DISCUSSION

Strategic America advances four arguments in its motion to dismiss: (1) Cirrus fails to allege a protectable trade secret in its misappropriation of trade secrets claim under the IUTSA; (2) the IUTSA preempts the claims for theft and conversion, unfair competition, and tortious interference with business relationships; (3) Cirrus's theft and conversion claims impermissibly criminalize a business dispute and attempt to recover tort damages for purely economic losses; and (4) Cirrus improperly claims Strategic America tortiously interfered with its own business relationships and fails to allege a requisite illegal act. The court reaches only the first two arguments.

A. *Cirrus Alleges a Trade Secret under the IUTSA (Count 2).*

Strategic America says Cirrus doesn't assert a protectable trade secret. The IUTSA allows for injunctive relief and damages for misappropriation of trade secrets, including double damages and

3

attorney fees when the conduct is willful and malicious. *See* Ind. Code §§ 24-2-3-3; 24-2-3-4; 24-2-3-5. A "trade secret" means "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ind. Code § 24-2-3-2.

In short, a protectable trade secret has four features: "(1) information, (2) [that] derives independent economic value, (3) is not generally known or readily accessible by proper means by other persons who can obtain economic value from its use, and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy." *Think Tank Software Dev. Corp. v. Chester, Inc.*, 30 N.E.3d 738, 744 (Ind. Ct. App. 2015). Assessing "whether a particular device or process is a trade secret is a fact sensitive determination." *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp*, 759 N.E.2d 239, 246 (Ind. Ct. App. 2001) (citing *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 916 (Ind. 1993)).

Strategic America challenges only whether MarketSnare was readily accessible. After all, Cirrus alleges why its product and associated materials are independently valuable and the steps the company has taken to keep them secret. Strategic America argues that it had proper access to MarketSnare not just because of the MRA but because Cirrus offered it for sale publicly; and that reverse engineering a publicly available product defeats Cirrus's trade secret assertion as a matter of law. Cirrus responds that MarketSnare wasn't generally known to the public and couldn't be properly reverse engineered because the company always insisted its employees, clients, partners (including Strategic America), and their clients keep MarketSnare confidential.

Though "[r]everse engineering can defeat a trade secret claim," it does so "only if the product could have been properly acquired by others." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 730 (7th Cir. 2003) (Illinois law); *see also Think Tank*, 30 N.E.3d at 744 (trade secret is something not

4

generally known or readily accessible "by proper means" and subject to reasonable efforts at secrecy). "[I]n the context of a confidential relationship," a party "ha[s] no legal authority to reverse engineer [a product] that it received in confidence." *Learning Curve*, 342 F.3d at 730; *see also Flotec, Inc. v. S. Rsch., Inc.*, 16 F. Supp.2d 992, 1000 (S.D. Ind. 1998) (owner of trade secret "may disclose [it] in confidence to employees or others without losing the legal protection of the trade secret"). The IUTSA makes this explicit, defining improper means to include "theft" or "breach of a duty to maintain secrecy." Ind. Code § 24-2-3-2.

Cirrus alleges that it "invariably required clients to agree to keep MarketSnare confidential" and that "[t]he MRA is no exception" [4 ¶ 12]. The MRA's confidentiality provision enumerates Strategic America's obligations. It first classifies "software computer programs, object code, [and] source code" as confidential information [4-1 § 14]. Next, it says Strategic America "shall use such Confidential Information only for the purposes of this Agreement and shall not copy, disclose, convey or transfer any of the Confidential Information or any part thereof to any third party," except to sublicense MarketSnare under the agreement [*id.*]. Cirrus also alleges that employees, resellers, partners, and clients were subject to the same requirement, and that MarketSnare techniques and processes were never public [4 ¶¶ 12, 30]. Cirrus alleges MarketSnare's techniques and processes were maintained in accordance with "rigorous data privacy standards" [*id.* ¶ 30].

These allegations support Cirrus's claim that Strategic America and others (including clients, resellers, and sub-resellers) were duty-bound to keep MarketSnare secret. Whether the MRA in each situation imposed this requirement, Cirrus otherwise pleads this fact, and the court must take all reasonable inferences in Cirrus's favor. With that said, Strategic America's disclosure or misuse of MarketSnare or associated information when it was nonpublic and protectable as a trade secret could plausibly constitute access or theft by improper means under the IUTSA. In short, Cirrus has pleaded a

5

protectable trade secret, so the misappropriation claim survives. The court must deny the motion to dismiss on this basis.

> B. *The IUTSA Preempts Cirrus's Claims for Theft and Conversion, Unfair Competition, and Tortious Interference with Business Relationships (Counts 3-5).*

Strategic America argues that the IUTSA preempts Cirrus's state law tort and quasi-criminal claims.[1] By its plain language, the IUTSA "displaces all conflicting [Indiana law] pertaining to the misappropriation of trade secrets, except contract law and criminal law." Ind Code § 24-2-3-1(c). Indiana law interprets this provision broadly, for it "abolishes all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status," including "claims that merely outline another allegation of civil misappropriations of a plaintiff's ideas." *Wagner-Meinert Eng'g, LLC v. TJW Indus., Inc.*, 587 F. Supp.3d 744, 748 (N.D. Ind. 2022) (quoting *HDNet LLC v. N. Am. Boxing Council*, 972 N.E.2d 920, 924-25 (Ind. Ct. App. 2012), *trans. denied*, 980 N.E.2d 322 (Ind. 2012)) (quotations and brackets omitted).

The uniform trade secret law that underpins the IUTSA permits "[o]nly those claims addressing or arising out of wrongs distinct from pure information piracy," *HDNet*, 972 N.E.2d at 925 (quoting *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, 235 P.3d 310, 322 (Haw. 2010)), though the "General Assembly worded [the Indiana] preemption provision more strongly than the one within the uniform act on which it was based," *Wagner-Meinert*, 587 F. Supp.3d at 748 (citing *Infinity Prods., Inc. v. Quandt*, 810 N.E.2d 1028, 1033 (Ind. 2004)). Indeed, the IUTSA has a broad preemptive reach that displaces conflicting law "pertaining to" trade secret misappropriation. *Id.* at 751 (citing Black's Law Dictionary (11th ed. 2019); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). This term must be read expansively because of its broad preemptive purpose. *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S.

---

[1] The claims for theft and conversion under the Indiana Crime Victims Relief Act have been called "quasi-criminal" rather than torts, even though "closely related." *Wysocki v. Johnson*, 18 N.E.3d 600, 605 (Ind. 2014).

6

709, 717 (2018); *Morales*, 504 U.S. at 383; *see also Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 96 (2017). The court applies the IUTSA's preemption provision today with this in mind.

In pleading an IUTSA claim [4 ¶ 28], Cirrus relies on this definition of misappropriation: "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." Ind. Code. § 24-2-3-2. The company's misappropriation claim alleges Strategic America disclosed how MarketSnare works to Lines Group and secretly developed a competing product, despite its obligations under the MRA. Cirrus's other claims must not pertain to the misappropriation of trade secrets, whether under this definition or any other under the IUTSA, else the IUTSA preempts them in favor of this one misappropriation claim.

Strategic America says Cirrus's tort claims are preempted because they reiterate or rely on Cirrus's allegations about the misappropriation of trade secrets. Cirrus says it pleaded independent facts to support these other tort claims. Though the motion may have begun with some question about its scope, the briefing in the end offers enough clarity.

1. *Theft and Conversion (Count 3).*

Cirrus alleges that Strategic America's "flagrant breach of the MRA and theft of Cirrus's trade secrets poses an existential threat to MarketSnare," and that Cirrus's damages "result [from] this conduct" [4 ¶ 14-15]. At the start, Cirrus thus casts its claims either in contract or in terms of misappropriation of trade secrets. Cirrus refers to Strategic America's "misappropriation" throughout its complaint. For the theft and conversion claims in count 3, which incorporate these prior allegations, Cirrus repeats the nature of these allegations of misappropriation—namely, that Strategic America worked secretly with Lines Group to steal Cirrus's trade secrets [*id.* ¶ 35].

7

This is precisely the same subject of the misappropriation claim, so the IUTSA preempts this count. *See* Ind. Code § 24-2-3-1(c); *Wagner-Meinert*, 587 F. Supp.3d at 751 (citing cases); *see also HDNet*, 972 N.E.2d at 927. As alleged, this count pertains to the misappropriation of trade secrets, without any independent basis to sustain a separate non-preempted claim. The court grants the motion to dismiss this count and accordingly declines to address Strategic America's alternate arguments to dismiss it.

2. *Unfair Competition (Count 4).*

Strategic America says the IUTSA also preempts Cirrus's unfair competition claim. This claim describes an open-ended category of "new torts" or "nameless forms of unfair competition" that may be later recognized to protect commercial values, including passing off one's goods as another's goods. *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598-99 (Ind. 2001); *Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627, 633 (7th Cir. 1968). Reverse palming off—a species of unfair competition—occurs when a company misappropriates another's product by removing the original name or trademark and selling it under a new name. *Beacham v. Macmillan, Inc.*, 837 F. Supp. 970, 977 (S.D. Ind. 1993).

To make the analysis perhaps easy today, Cirrus alleges that this is "precisely what [Strategic America] did by marketing MarketSnare to its clients under a new brand" [4 ¶ 40]. Its unfair competition claim thus "precisely" hinges on a theory of misappropriation—in more detail, that Strategic America entered the MRA, learned how MarketSnare worked, and schemed to develop a competing version using Cirrus's trade secrets and selling it under a different name (EditionAI). [*id.* ¶ 13, 39]. In Cirrus's telling, what enabled Strategic America to copy MarketSnare was its unauthorized use of the product. It isn't possible for Cirrus to allege its unfair competition claim without tracing back to the alleged misappropriation; without it, there was no improperly obtained product to mimic. This claim thus pertains to the misappropriation of trade secrets. Cirrus pleads no other variant of unfair competition to avoid preemption under the IUTSA. The court grants the motion to dismiss this count.

8

3. *Tortious Interference with Business Relationships (Count 5).*

Strategic America says the IUTSA also preempts Cirrus's claim for tortious interference with business relationships. To prove this claim, Cirrus must show (1) the existence of a valid business relationship, (2) Strategic America's knowledge of this relationship, (3) Strategic America's intentional interference with this relationship, (4) the absence of justification, and (5) damages resulting from the wrongful interference. *See SWL, L.L.C. v. NextGear Cap., Inc.*, 131 N.E.3d 746, 757 (Ind. Ct. App. 2019). The tort also "requires some independent illegal action." *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003).

Cirrus contends it granted Strategic America's clients a license to use MarketSnare confidentially, and that Strategic America was aware of these relationships [4 ¶ 43]. Cirrus also says Strategic America unjustifiably obstructed these relationships by "stealing the intellectual property associated with MarketSnare" and then "migrating client sites from [MarketSnare] to EditionAI"—the copycat platform [*id.* ¶ 44]. These allegations thus likewise pertain to the misappropriation of trade secrets. As such, this claim is preempted by the IUTSA. The court has no need to reach Strategic America's alternate arguments *vis-à-vis* this claim.

## CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the motion to dismiss [12], dismissing Cirrus's claims for theft and conversion, unfair competition, and tortious interference with business relationships (counts 3-5) and permitting all other counts to proceed.

SO ORDERED.

October 22, 2024                                      *s/ Damon R. Leichty*
                                                     Judge, United States District Court